```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

| | | |
|---|---|---|
| DANIEL J. MASON, | ) | |
| | ) | |
| Plaintiff, | ) | 05 C 516 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| BWAY CORP., and | ) | |
| JOSEFINA BARRAGAN, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is whether the court should dismiss this Complaint for improper venue. Plaintiff Daniel Mason ("Mason") and Defendant Bway Corporation ("Bway") have entered into a collective bargaining agreement which includes a provision for arbitration. For the following reasons, the court, *sua sponte*, dismisses Bway for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), and relinquishes jurisdiction as to Defendant Josefina Barragan's ("Barragan") state law claims. Defendants' Motion for Summary Judgment is denied as moot.

## I. INTRODUCTION

### A. Facts

This cases arises out of Mason's termination from Bway. Bway manufactures metals and plastic packaging. In 1990, Mason began his employment at Bway as a quality control inspector, at Bway's Franklin Park, Illinois facility. At the time of Mason's termination, he worked as a

1

forklift operator. During the course of his employment, Mason was represented by the International Brotherhood of Teamsters Local 714 ("Local 714").

A collective bargaining agreement ("CBA") governed the terms and conditions of Mason's employment at Bway. Pursuant to the terms of the CBA, either party may opt for arbitration.

### Article X
### Grievance Procedure- Discharge

Where arbitration is requested by either party, in accordance with the provisions of this Article, the parties shall attempt to agree on the selection of an Arbitrator . . . The parties agree that the Arbitrator's Award shall be final and with respect to framing an award and remedy, without changing the terms of this Agreement or the intent of the parties as expressed herein.

On September 17, 2004, Mason alleges that he and a co-worker, Barragan were in a physical altercation, outside and inside of the Bway facility. According to Bway, this fight began when Barragan approached Mason in the maintenance shop to discuss her concerns that Mason was spreading rumors about her. Both Mason and Barragan left the shop, and went to the parking lot, where a physical altercation ensued. At one point during the fight, Mason alleges that he grabbed Barragan, twisted her around, placed her in a "bear hug," and returned to the facility. Arturo Aldana ("Aldana"), an employee at Bway, separated the two once they returned to the building.

Once freed, Barragan ran throughout the building in search of her supervisor, Alejandro Torres ("Torres"). Barragan informed Torres about her altercation with Mason, and called 911 to make a report of what transpired. Shortly thereafter, the Franklin Park police arrived at Bway and arrested Mason, on the charges of battery and attempted unlawful restraint. At that time, Lou

2

Vandermeer ("Vandermeer"), the Litho and Pre-Press Manager at Bway, informed Mason that he was placed on a five-day suspension. Barragan received medical assistance from the paramedics that arrived on the scene, and spoke with police officers.

Later that day, Vandermeer informed Kevin Richards ("Richards"), the plant manager, of the incident and of Mason's suspension. In the course of the following week, Bway conducted an investigation on the fight between Barragan and Mason. Bway alleges that it collected numerous employees' statements and conducted employee interviews as well. Richards eventually interviewed both Mason and Barragan in order to determine what occurred.

Then, on September 22, 2004, Bway met with Mason and Barragan separately. Both parties brought written statements of their version of events. Richards met with Barragan first. During the meeting, Richards asked Barragan about the altercation and information contained in her statement. In her statement, Barragan indicated that around 6:00 a.m. on September 17, she approached Mason to discuss her aforementioned concerns. Specifically, Barragan claimed that another co-worker told her that Mason suspected that Barragan had vandalized another co-worker's locker. Barragan further alleged that after a short exchange of words, Mason physically attacked her.

At Mason's meeting, Richards asked him about the events of September 17. In his written statement, Mason admitted that he named Barragan as a suspect in regard to an incident involving a co-worker's locker. Mason claimed in his statement that Barragan struck him, and that he grabbed her hand, and pinned it behind her back. Bway claims that at this meeting, Mason denied striking Barragan but admitted that he had restrained her in a "bear hug."

Following these meetings, Richards reviewed each individual's written statement, and the

3

various documents collected in the course of his investigation. Richards concluded that a physical altercation had occurred, and that Barragan had been hit more severely than Mason claimed, and that Mason's actions were more egregious. Specifically, Richards found that Mason's conduct violated Company Rule 18, which prohibits "fighting or attempting bodily injury to another employee while on Company property." Richards reviewed this findings with Joseph Frabotta ("Frabotta"), Bway's director of Human Resources, who agreed with Richards' decision to terminate both employees.

On September 30, 2004, Richards sent Mason and Barragan separate letters terminating their employment with Bway. Following the receipt of these letters, both Mason and Barragan filed grievances under the CBA. On October 8, 2004, Mason and Barragan had separate grievance meetings with Richards. At Barragan's meeting, Teamsters 714 representative Genaro Rodriguez ("Rodriguez") made a proposal to Bway to reinstate only Barragan, and uphold Mason's termination. Under this proposal, the union would agree not to arbitrate or litigate Mason's grievance.

Union Proposal to Settle M. Barragan/ D. Mason Terminations

The union proposes that Maria Barragan be returned back to work. That she be made whole for the time she has been off work and if the company wants some restrictions in her return to work the union will discuss this with the company. In regards to Daniel Mason's termination his termination would stand and the union would not arbitrate or litigate Daniel Mason's grievance any further.

Rodriguez, Richards, and two other employees signed this agreement. Neither Mason nor Barragan signed the proposal to settle.

## B. Procedural History

On October 25, 2004, Mason filed a National Labor Relations Board ("NLRB") charge

4

against Bway alleging that he was terminated due to his "union and protected concerted activities." This charge was eventually dismissed. Then, on November 4, 2004, Mason filed an EEOC charge against Bway. The EEOC issued Mason a right-to-sue letter in January 2005.

On January 28, 2005, Mason filed his initial complaint, alleging violations of Title VII on the basis of sex and gender discrimination and a state law claim of intentional infliction of emotional distress ("IIED") against Bway, and state law claims of IIED and assault and battery against Barragan. On November 2, 2005, Mason filed his Amended Complaint. Then, on September 26, 2006, Bway filed its Motion for Summary Judgment. Mason filed his Response on November 2, 2006, and Bway filed its Reply on November 27, 2006.

Then, on December 28, 2006, the court asked the parties to brief the issue of arbitration as it applies to the CBA. Mason filed his brief on January 12, 2007, and Bway filed its brief on January 16, 2007. The Motion for Summary Judgment is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

Under Federal Rule of Procedure 12(b)(3), a case may be dismissed for lack of proper venue. Where parties to a contract have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate. See Metro. Life Ins. Co. v. O'Malley, 392 F. Supp. 2d 1042 (N.D. Ill. 2005); see also Cont'l Ins. Co. v. M/V Orsula, 354 F.3d 603, 606-07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss."); Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) ("We have held dismissal [where both parties to a contract have agreed to arbitrate disputes] to be appropriate, and, when the question has arisen,

5

we have held that such dismissal properly is requested under Rule 12(b)(3).") (citations omitted).

## B. Plaintiff's Cause of Action

### 1. *Arbitration in the federal courts*

District courts are constantly reminded that there is a "national policy favoring arbitration." Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1207 (2006). Additionally, the court notes that "parties that opt for arbitration trade the formalities of the judicial process for the expertise and expedition associated with arbitration, a less formal process of dispute resolution by an umpire who is neither a generalist judge nor a juror but instead brings to the assignment knowledge of the commercial setting in which the dispute arose." Lefkovitz v. Wagner, 395 F.3d 773, 780 (7th Cir. 2005) (internal citations omitted).

Arbitration is contractual by nature; "a party can be compelled to arbitrate only those matters that she has agreed to submit to arbitration." James v. McDonald's Corp., 417 F.3d 672, 677 (7th Cir. 2005) (citing First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 945 (1995)); see Gibson v. Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir. 1997)). Federal courts have long approved of arbitration as a legitimate form of dispute resolution. See Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673 (7th Cir. 1983).

The Supreme Court and the Seventh Circuit have both indicated very clearly that where a contract contains a valid arbitration clause, disputes like the one presented in this case usually belong in front of an arbitrator, not a district court. "[T]here is a presumption of arbitrability that may only be overcome by 'forceful evidence' of an intent to exclude the claim." Oil, Chemical & Atomic Workers Int'l Union, Local 7-1 v. Amoco Oil Co., 883 F.2d 581, 587 (7th Cir. 1989) (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 585 (1960)); see

also Local 75 v. Schreiber Foods, Inc., 213 F.3d 376, 380-81 (7th Cir. 2000) (quoting Warrior, 363 U.S. at 585). There is therefore a strong presumption in favor of arbitrability in this case.

### 2. *The CBA's Arbitration Clause*

As a preliminary matter, the court notes that the overarching issue in this case is the proper venue, not jurisdiction, of this action. While the court has jurisdiction over this case, the Northern District of Illinois is an inappropriate venue. See Continental Ins. Co., 354 F.3d at 608 (district court has wide discretion to dismiss a case for improper venue if the decision is in conformity with established legal principles and, in terms of the court's application of those principles to the facts of the case, is within the range of options from which a reasonable trial judge would select).

The court notes, however, that the arbitration clause at issue in the CBA contains permissive language. "When arbitration is requested by either party . . . [t]he parties agree that the Arbitrator's Award shall be final and binding up them . . . ." Def.'s Supp. Brief on Venue, Ex. 1, p. 14. The existence of this language, however, cannot defeat the strong presumption in favor of arbitrability. "The use of permissive [language] . . . is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 204 n.1 (1985).

Mason and Bway clearly "'have a contract that provides for arbitration of some issues between them.'" See County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 821 (7th Cir. 2006) (quoting Miller v. Flume, 139 F.3d 1130, 1136 (7th Cir. 1998)). Any questions "'concerning the scope of the arbitration clause are resolved in favor of arbitration.'" Id. Even though Bway submits a propsoal not signed by the plaintiff that states that the "Union would not

7

arbitrate or litigate Daniel Mason's grievance any further," the applicability of such an agreement is left to the district court to decide. "Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator." Zurich Amer. Ins. Co. v. Watts Industries, Inc., 466 F.3e 577, 580 (7th Cir. 2006) (quoting Cont'l Cas. Co., 417 F.3d at 730.

The court therefore determines that the parties agreed to arbitrate the dispute in this case, despite the document Bway submitted with its brief filed on January 16, 2007. Mason's claims against Bway stem from the interpretation or application of the CBA between the Union and Bway, as to whether Bway discriminated against Mason when it terminated him, and not Barragan. The nature of the dispute is one which lends itself to arbitration: A dispute about an employee's locker, a verbal encounter between two employees about the accusation, eventually a fight between these employees, and ultimately a dispute about the way the management of the company handled the matter. The proper venue for this dispute is thus arbitration, not the Northern District of Illinois.

This result "makes eminent sense. . . in terms of our precedent." Continental Gas Co., 417 F.3d at 733. At the time the Mason and Bway signed the CBA, they opted to "trade the formalities of the judicial process for the expertise and expedition associated with arbitration." See Lefkovitz, 395 F.3d at 780. There are no ambiguities in the CBA, and the arbitration clause is expressly stated in plain language. See In re Comdisco, Inc., 434 F.3d 963, 967 (7th Cir. 2006). Therefore, because Mason and Bway have previously agreed to arbitration, they should not now be allowed to turn their back on that agreement, in favor of litigation in the federal court. See id.

## III. CONCLUSION

For the foregoing reasons, the court, *sua sponte*, dismisses Bway pursuant to Federal Rule of Civil Procedure 12(b)(3). Furthermore, the court relinquishes jurisdiction on Barragans' state law claims. As a result, the Complaint is dismissed. Bway's Motion for Summary Judgment is denied as moot.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: 1-25-07